Good morning, your honors. May it please the court. I'm Charles Keene, I represent William and Julie Sarale, plaintiffs and appellates. I would request to reserve three minutes. Okay, count down and keep track and we'll try to help you. Thank you, Ron. Dismissing the claims, all of the claims in the complaint, a central issue that the district court based its decision on was its determination of scope and property rights. This is a threshold issue. It was thoroughly, my argument was thoroughly briefed. I don't think there was a significant opposition, so I submitted on the briefs. I disagree with it, but notwithstanding my disagreement, I would like to argue that even if that decision stood, even if you upheld that scope on de novo review, the complaint would state all the claims that are in there. They wouldn't cover as much property and as much damage, but it would state complaints. Here's my problem with the case as it comes to us in this posture. We've had a decision by the administrative agency and we've had a decision by the California court. It sounds to me as though those are decided issues and we're bound by collateral estoppel. How do you get around that point? As to the court of appeals, I think I quoted in my opening brief, they said we do not reach the question of the scope of the easement. But they reached the question that there was an easement. That was a false question. This is buried in my opposition, which is in the record. When I was filing the original complaint in San Joaquin County, I was told by someone who knew how to read maps that the easement legal was incorrect. I didn't want to put something in the complaint that wasn't true. So I pleaded the easement. I argued the easement and the terms of the easement. I just put in there that I didn't say it burdened this piece of property. And that was interpreted as I was challenging the existence of an easement. If the written easement wasn't effective, there would be an implied easement and the written easement would be probative of its terms. So I never questioned the existence of an easement. That's not a question. But we got a decision that there is an easement. Yes, but they didn't go to scope, and that's what this case is about. The administrative agency goes to whether or not 20 or 10 feet is within the appropriate scope, whether that's reasonable trimming. The administrative decision property was not put in issue in my complaint. And the decisions I think are quoted in my brief said we do not address property issues. They said we refuse to consider fraud. And they decided that the conduct trimming to 20 feet was reasonable within their regulations. They said nothing about scope. There was nothing in that that I could appeal. The PUC is allowed to determine how far they can trim on a piece of property. So you and I may have a difficulty in terms of understanding each other. When I said scope, I included sort of whether it was 10 or 20 feet. Precisely. They didn't determine the scope of the easement. They just determined that under their regulations, PG&E's cut to 20 feet wasn't offensive. So it was property issues which scope were not put in issue, and they were not decided. And the complaint, they're supposed to be an identity of issues. They weren't the issues. The only issue I asked them to decide was the issue that the San Joaquin County Superior Court ordered me to have decided before I could get access to the California courts again. And that was whether or not the trimming that was conducted at their property was not in accordance with their regulations were excessive. That's what I asked for. That was all that was put in issue. I did ask them to determine if the statements of the PG&E were false, and they refused to do it. They said, you know, we pick our issues. But, counsel, if the commission's ruling is that PG&E was entitled to trim within 20 feet of the line, then what's been taken in violation of the due process clause of the Constitution? See, in other words, if PG&E has the right to cut portions of the walnut trees within that range, I thought your whole claim was based upon the fact that they didn't have the right to cut that deeply, and that's the property that you allege your clients have been deprived of. But if the commission's ruling is that that trimming is reasonable, then there is no taking under the Fifth Amendment to which the due process clause would arise, is there? There is, Your Honor, because the PUC decided it based on regulatory compliance. They specifically disavowed issue. Whether or not the taking occurred depends on property rights, not whether regulations prohibit it. But your client's claim to property taken are, I'll call it, excessive length from the tree, right? That's correct, Your Honor. And the walnuts that were lost, and the trees, I guess some of the trees actually may have died because they were cut too heavily. Is that correct? That's correct. As to the damage to the claim, yes. But if the commission determined that those trimming activities were authorized by the regulations, then how can there be a deprivation of property here? PG&E has the right to take what you would otherwise claim to be property belonging to the Sorales in the form of 10 feet more of the tree. Absolutely, but they have to pay for it. And the PUC does not determine property rights. They don't have jurisdiction to pay for it. Why do they have to pay for it if the easement gives them the right to trim in order to protect the lines for fire danger? That's the whole issue, Your Honor, was the right to trim the easement 10 feet or 20 feet. Our contention is that it was established at 10 feet by 89 years of use. The district court had the same view that you did. He said, hey, they're doing what the regulations say. The violations of regulations or adherence to regulations doesn't have any direct correlation to takings because many takings cases are based on regulations. But isn't that determination, as I understand the jurisdiction of the California Public Utilities Commission, it is quasi-judicial in the sense that the hearing that was held before the commission at which you adduced evidence and the commission ultimately rendered a decision was as to the reasonableness of the trimming activities. And the commission ruled against you and said PG&E had the right to do that. So what's been taken in violation of due process from the Sorales as a result of the commission's ruling? By due process, I haven't argued that. It was taken by violation of the Fifth Amendment because it was taken without compensation. The Fifth Amendment provides for due process for the taking of property. And payment. Well, they may not have. If they have an easement, then the payment was a dollar in gold coin of the sovereign in 1915. Right? Your Honor, if it's not having an easement, it's having an easement that allows them to cut 20 feet. Well, for me, the question really comes down to does the administrative body, does the commission have the authority to determine the reasonableness of the scope of the easement? And if it had jurisdiction to decide that and then it decided it pursuant to its regulations, I'm done. If it doesn't have jurisdiction to decide what the proper scope of that easement is, then you might have a case. My contention is they don't. In their decisions, they indicated they did not adjudicate property rights. They don't. They didn't assert it. They determined in the context of their regulations whether or not it was reasonable. That was their job. PG&E is clear with the regulations to cut an extra 10 feet, but that doesn't address our easement. Mr. Keene, why did you not prosecute a challenge to the commission's ruling before the California either district court of appeal or the California Supreme Court? There was no issue I could appeal. They did not. If they had adjudicated property rights, which they couldn't, I could appeal it. They adjudicated what they can adjudicate, and that's whether or not PG&E could cut 20 feet without violating their regulations. They disavowed any determination of property rights. In one decision, I can't tell you which it was, they said, assuming a valid easement, they assumed the property rights and just did what they had jurisdiction to do, which was decide whether it was regulatory. If they passed a regulation that said you have to trim to 20 feet, PG&E would have to do it. I recognize, but they'd have to condemn the property and take it. They did not pass any such regulation. That's the basis of the fraud claims here. But even if they did, PG&E, before they cut the extra 10 feet, would have to make sure they have an easement to do it. Okay. Now, we've taken you over time. We'll have you on the other side, but we'll make sure you get a chance to respond. Thank you, Your Honor. Good morning, Your Honors. Jeremy Rosen of Horvitz and Levy for Pacific Gas and Electric. I've reserved seven minutes, and counsel for the other appellee, the independent system operator, has reserved three minutes, so I'll do my best to watch the clock. I think it's important to go back to the text of the easement, which, as was pointed out, was established in existence by the California Court of Appeal. The easement gives PG&E the full right and liberty of using the right-of-way for all purposes and gives PG&E the right to also have full right and liberty of cutting and clearing away all trees and brush on either side of the center line whenever necessary and proper for the convenient use and enjoyment of said line of towers and wires. So who gets to decide what's necessary and proper? Well, it is correct that that, in many contexts, would be a factual question, but that factual question has been resolved by the PUC. Well, that's my question. Who gets to decide? Does the PUC get to decide that? PUC has jurisdiction to determine the reasonableness of the trimming, and if you look at the paragraph before in the easement that I just read, the only limitation on the absolute right of PG&E to use the easement is that PG&E must avoid, so far as it reasonably can, interfering with the landowner's agricultural use. Yes, but that doesn't avoid the question of who gets to decide, whether insofar as it reasonably can and so on. I understand that that's what the wording of the easement is, but then we've got to interpret the easement. And does the administrative body have the authority to interpret the scope of the easement, not merely to interpret the scope of the regulations but the scope of the easement? Well, it's a two-step process. Ultimately, it is for the district court and now for you to legally interpret the scope of the easement, which is what the PUC said. Oh, so you say it's not already been determined by the administrative agency? Well, it has been in the sense that the PUC, which is at page 281 of the supplemental excerpts of record, while it did note, as counsel pointed out, that they weren't resolving the actual scope of the easement, it did note that based on the evidence in this case, it was reasonable to find that 20-foot trims did accommodate the agricultural use of the land as far as was practical, and then made numerous factual findings that the 20-foot trims was required for safety and reliability and was reasonable. Those findings of reasonableness are absolutely entitled to a deference by this Court as having been decided. So when you, in your de novo review, interpret the scope of the easement and the easement gives, in the first instance, the absolute right of PG&E to cut down any trees on the easement with the only limitation being that they have to, as far as practical, leave reasonable use for agricultural use, the PUC made that determination that it was reasonable, and that factual finding is entitled to deference here. And that, I think, answers the question. Now, there's a difference between deference and preclusive effect. Do you say only deference? Well, it is both deference and preclusive effect, Your Honor. And there's numerous cases that cited in the briefs and others that, because as was pointed out, the PUC is sort of not only an administrative agency but acted here in an adjudicatory fashion. There was a contested evidentiary hearing. There was counsel on both sides. There were arguments. Everyone had opportunity to be heard. There was an appellate process within the PUC that plaintiffs used. And at the end of the day, that decision was final and, as was pointed out, was not challenged in either the California Court of Appeal or the California Supreme Court, which are the only courts with jurisdiction to second-guess the decisions of the PUC, although even there the review is quite deferential. So for this court, it is preclusive. And those factual findings mean that the trimming by PG&E here was reasonable. And given the otherwise absolutist text of the easement, PG&E had the right to the full use of the easement and the right to cut down any and all trees within the easement. And any other result would lead to a very sort of cataclysmic, as both the PUC noted and the California Court of Appeal, if you could have individual litigation by every landowner about the specific tree trimming on their property, you would destroy the entire regulatory purpose of the entire State of keeping a safe and reliable provision of electrical lines. And that would, I think, would cause great problems. And I think it's important to go through the very significant factual findings that the PUC made. You know, the PUC, it's noted at page 274 of the Supplemental Excerpt to Record, found specifically that it was reasonable and prudent to increase the time of trim from 10 to 20 feet to meet the State's safety and reliability goals. And they gave a number of reasons that they found factually for doing that. There had been in 2003 a major blackout on the East Coast that was caused by walnut trees, that they found that walnut trees are particularly unsuitable for being under power lines because they grow so much, and that a blackout in this area could have impacted 166,000 customers, including schools and hospitals, and that the walnut trees, even on the Sorale property, would grow more than 17 feet a year, which – and there's only a 27-foot clearance between the line and the ground. So if you only do the 10-foot trim and you have a 17 feet of growing, you have a serious risk of safety and reliability problems. And all of these factual findings are preclusive here and show why the trimming decision here was reasonable. And under the plain text of the easement, where PG&E shall have the full right and liberty of cutting and clearing away all trees and brush on either side of the center line whenever necessary and proper for the convenient use and enjoyment of the lines, I think that has to answer the question, because if the PUC, who has the ultimate responsibility for making these determinations, is not allowed to make this reasonability finding, it would significantly undercut the regulatory function of the state and would jeopardize safety and reliability of electrical power. Mr. Rosen, if I understand – I know you're cutting in to – Don't worry about answering the question. Mr. Gibson will get his three minutes. Okay. Thank you very much. If I understand your argument, then are you suggesting that the district, the district applied the doctrine of collateral estoppel and said the Sorales cannot relitigate the reasonableness of the trimming, therefore, on a 12B6 motion to dismiss, there's – they can't state a claim because there has been no constitutional taking, there has been no false representation, rejecting essentially all of the claims that they had put. That's exactly correct, and there's a long line of authority that, you know, the only way that you can, you know, render, you know, a court can determine whether there's another prior decision that has preclusive effect is through some form of judicial notice request, and there are many cases holding that on a 12B6 motion with the judicial notice of the prior preclusive opinion, that is – can be used as a claim. I think it's also important on the takings point. If you look at 276 of the supplemental excerpts of record, the PUC found that there was no taking because PG&E was acting under an easement that gives it the full right and liberty to use for all purposes. So – and noted that the trims occurred on only a small portion of the Sorales property, four out of 50 acres. So there's not – so the takings issue is already also, I think, been decided. If you want to maintain your friendship with Mr. Gibson, you should sit down. I will sit down. Thank you very much, Your Honors. Let's put three minutes on the clock, please. Thank you, Your Honors, and may it please the Court, Mark Gibson on behalf of the California Independent System operator. I have just one principal point I'd like to make on behalf of CAISO, which is this. Even if this Court were to sustain the Sorales claims as against PG&E, there are independent reasons why those claims fail as against CAISO, and to explain why, I'd like to just briefly walk through those claims. So start with the takings claims. Those claims fail against CAISO for a simple reason. CAISO is not a state actor. The statutes that CAISO is regulated by specifically designate CAISO as a nonprofit public benefit corporation. They do not designate CAISO as an arm of the state or a state agency. And other indicia of arm of the state factors point in the same direction. For example, there is nothing in those statutes that suggests that a money judgment against CAISO would run against the state treasury. There is nothing in those statutes that indicates that the state of California supplies funding to CAISO. So the takings claims fail against CAISO because CAISO is not a state actor subject to the takings clause. Turn next to the fraud claims. Those claims fail against CAISO for at least two reasons. First, the Sorales have never identified a specific misrepresentation that CAISO made. And second, remember that the 20-foot trims began in 2004. According to the Sorales' own complaint, the allegedly fraudulent conduct by CAISO began years later in 2008 and 2009. So there's no way that the Sorales can show that they were relying on allegedly fraudulent conduct in 2008 and 2009 when they allowed the 20-foot And finally, turn to the trespass claim. That claim also fails against CAISO for at least two reasons. First of all, there is no allegation in the complaint that CAISO ever physically entered the Sorales' property. And second, as the district court explained, the Sorales can't show that CAISO caused PG&E to unlawfully enter onto the Sorales' property to conduct these trims. So for those reasons, Your Honor, I ask that at a minimum you affirm the district court's order dismissing all of the claims as against CAISO. Okay. Thank you. Now, Mr. Keene, we took you over. You had sought to reserve three minutes. Would you put three minutes on the clock, please? I'll try to be fast, Your Honor. As to CAISO's contentions, they ought to read the disclosure statement that they put on their brief. They were regulated on behalf of the state. I believe the test for a state actor is whether or not the state delegated you a function. The state delegated them a function by statute and created them by statute. As far as no misrepresentations by CAISO specifically, no, until 2009. But they actively concealed discovery of the truth. We were trying to find out if there really was a regulation, and they would not produce it. They produced something which said trimming clearances was all redacted. And as far as not being responsible, they admitted in their brief that they directed or they required PG&E to do the trimming that is the alleged trespass. And trespass is not just entry in property. It's exceeding easement. As far as PG&E's comments, the court asked why I did not appeal because there was nothing that I could appeal in that decision. It was a regulatory decision. They made the call. There was nothing in property. Okay, so what was improper about the federal district court accepting the factual findings of the commission as to the reasonableness of the trimming activities granting race judicata effect and then testing whether your claim stated a cognizable claim under Rule 12b-6 analysis? Identity issues is one thing. As far as collateral stuff goes, the other is violation of hearsay. No, no, no. I'm not sure you understand my question. In other words, if the court properly found that the commission's ruling as to the reasonableness of the trimming could not be re-challenged in federal court, then for purposes of the Rule 12b-6 analysis, the court gave effect to those findings and asked in light of those findings, can the Sorales state a claim under your various theories? The court concluded that you did not or could not and that there was no way that your claims could be amended to get around the ruling by the commission that what PG&E did here was authorized. That's how I read the federal district court's decision. One allegation of error is the federal district court accepted the findings. He judicially noticed it, which you can notice that they did make a decision, who was involved and what the decision was, but here's the findings. But for purposes of collateral estoppel, he's entitled to look at the findings, is he not, in order to determine whether or not he's being re-asked to litigate something that's already been fully and fairly litigated. But the collateral estoppel argument is what was going on before. There was no identity of issues, and there was no identity of issues presented. The complaint to the PUC didn't decide property, and the district court applied that to the determination of property. I've got 35 seconds to go, and I have to leave to at least quickly state my claims. Actually, you're over time, but would you please state it? I'll state them as concisely as possible. My contention here today was that the complaints would stand even if the district court's contention as to land in the easement was concerned. Allegations in this complaint at paragraph 16 talk about damage to trees outside the easement. His determination would have no effect on that. And the other thing is that unpleasant judicial taking that I raised, there was a right to indemnification, which was payment, not third-party indemnification, before this order, and it disappeared. The only thing I could find that fit that was Justice Scalia's observation that if there's a right before the court that disappears, it vanishes. The court took it. Okay, thank you. Thank you very much. We understand the argument. I have to say the court's sympathetic with your clients. I mean, whether legally or otherwise, they had an expectation that the 10-foot trim would remain. They operated under that assumption for a very long time, and this obviously came as a surprise to them. And irrespective of how this case actually comes out, I want to express the sympathy of the court for the situation which your clients have found themselves. So thank you. Thank both sides for their arguments. The case of Ceronelli v. California Independent Assistant Operator Corporation and PG&E now submitted for decision.
judges: W. Fletcher, Tallman, Hoyt